**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEWIS D. BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. _____ |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| MONEYGRAM INTERNATIONAL, INC., ) | |
| W. ALEXANDER HOLMES, ANTONIO O. ) | |
| GARZA, ALKA GUPTA, FRANCISCO ) | |
| LORCA, MICHAEL P. RAFFERTY, JULIE ) | |
| E. SILCOCK, W. BRUCE TURNER, and ) | |
| PEGGY VAUGHAN, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on February 15, 2022 (the "Proposed Transaction"), pursuant to which MoneyGram International, Inc. ("MoneyGram" or the "Company") will be acquired by Mobius Parent Corp. ("Parent") and Mobius Merger Sub, Inc. ("Merger Sub").

2.     On February 14, 2022, MoneyGram's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement") with Parent and Merger Sub. Pursuant to the terms of the Merger Agreement, MoneyGram's stockholders will receive $11.00 in cash for each share of MoneyGram common stock they own.

3.      On March 29, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.   Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of MoneyGram common stock.

9.      Defendant MoneyGram is a Delaware corporation and a party to the Merger Agreement.   MoneyGram's common stock is traded on the NASDAQ under the ticker symbol "MGI."

10.    Defendant W. Alexander Holmes is Chief Executive Officer and Chairman of the Board of the Company.

11.    Defendant Antonio O. Garza is a director of the Company.

12.    Defendant Alka Gupta is a director of the Company.

13.    Defendant Francisco Lorca is a director of the Company.

14.    Defendant Michael P. Rafferty is a director of the Company.

15.    Defendant Julie E. Silcock is a director of the Company.

16.    Defendant W. Bruce Turner is a director of the Company.

17.    Defendant Peggy Vaughan is a director of the Company.

18.    The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

19.    MoneyGram is a global leader in the evolution of digital P2P payments, and delivers innovative financial solutions to connect the world's communities.

20.    The Company leverages its modern, mobile, and API-driven platform and collaborates with the world's top brands to serve consumers through its direct-to-consumer digital channel, global retail network, and embedded finance business for enterprise customers.

21.    On February 14, 2022, MoneyGram's Board caused the Company to enter into the Merger Agreement.

22.    Pursuant to the terms of the Merger Agreement, MoneyGram's stockholders will receive $11.00 in cash per share.

23.    According to the press release announcing the Proposed Transaction:

MoneyGram International, Inc. (NASDAQ: MGI) (the "Company"), a global leader in the evolution of digital P2P payments, and Madison Dearborn Partners, LLC ("MDP"), a leading private equity firm based in Chicago, today announced a definitive agreement under which funds affiliated with MDP will acquire all outstanding shares of MoneyGram for $11.00 per share in an all-cash transaction valued at approximately $1.8 billion. The purchase price represents a meaningful premium of approximately 50% to MoneyGram's unaffected closing stock price on December 14, 2021, the last trading day prior to media speculation regarding a possible transaction. . . .

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by the MoneyGram Board of Directors, MoneyGram shareholders will receive $11.00 in cash for each share of MoneyGram common stock they own. In addition, upon the closing of the transaction MDP will be refinancing the Company's outstanding debt, which was $799 million as of December 31, 2021.

Committed debt financing for the transaction has been provided by Goldman Sachs & Co. LLC, Deutsche Bank Securities Inc. and Barclays. The transaction is expected to close in the fourth quarter of 2022, subject to customary closing conditions, including approval by MoneyGram shareholders and receipt of regulatory approvals, including required approvals in various jurisdictions related to money transmitter licenses. Upon completion of the transaction, MoneyGram will become a private company and MoneyGram shares will no longer be listed on any public market.

The agreement includes a 30-day "go-shop" period expiring on March 16, 2022. During this period, the MoneyGram Board and its advisors are permitted to actively initiate, solicit, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that may offer alternative acquisition proposals. MoneyGram will have the right to terminate the MDP agreement to enter into a superior proposal subject to the terms and conditions of such agreement. There can be no assurance that this "go-shop" process will result in a superior proposal or that any other transaction will be approved or completed. MoneyGram does not intend to disclose developments with respect to the go-shop process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

**Leadership and Headquarters**

Following the close of the transaction, it is expected that MoneyGram will continue to operate under the MoneyGram brand and be led by Alex Holmes and the Company's existing leadership team. MoneyGram will maintain its headquarters in Dallas, Texas. . . .

**Advisors**

BofA Securities, Inc is serving as exclusive financial advisor to MoneyGram, Vinson & Elkins LLP is acting as legal counsel and Paul Hastings LLP is acting as financial services regulatory counsel.

Goldman Sachs & Co. LLC is acting as lead financial advisor to MDP, Deutsche Bank Securities Inc., Barclays and J.P. Morgan Securities LLC are acting as financial advisors to MDP and Latham & Watkins LLP, Kirkland & Ellis LLP and Covington & Burling LLP are providing legal counsel.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

24.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

25.     As set forth below, the Proxy Statement omits material information.

26.     First, the Proxy Statement omits material information regarding the Company's financial projections.

27.     The Proxy Statement fails to disclose: (i) all line items used to calculate the financial projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

28.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

29.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA").

30.     With respect to BofA's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose: (i) the closing dates of the transactions; and (ii) the total values of the transactions.

31.     With respect to BofA's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the projected cash flows used in the analysis and all underlying line items; (ii) the terminal values used in the analysis; and (iii) the individual inputs and assumptions underlying the discount rates and multiples used in the analysis.

32.     With respect to BofA's price targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

33.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

34.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

35.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and MoneyGram**

36.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  MoneyGram is liable as the issuer of these statements.

38.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

41.     The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

42.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

43.     Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

44.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of MoneyGram within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of MoneyGram and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

48.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 6, 2022                          **RIGRODSKY LAW, P.A.**

                                    By:   */s/ Gina M. Serra*
                                          Gina M. Serra
                                          825 East Gate Boulevard, Suite 300
                                          Garden City, NY 11530
                                          Telephone: (516) 683-3516
                                          Email: gms@rl-legal.com

                                          *Attorneys for Plaintiff*